STATE OF NORTH CAROLINA v. EARL LEE BRUNSON, III

No. COA07-284

(Filed 4 December 2007)

**1. Appeal and Error— preservation of issues—introduction of evidence after denial of motion to dismiss**

Although defendant contends the trial court erred by denying his motion to dismiss the charges of first-degree kidnapping, second-degree rape, and assault by strangulation, defendant failed to preserve this issue for review, because: (1) N.C.G.S. § 15-173 provides that if defendant introduces evidence, he waives any motion for dismissal or judgment as in case of nonsuit which he may have made prior to the introduction of his evidence and cannot urge such motion as ground for appeal, and in this case defendant presented evidence following the trial court's denial of his motion; (2) defendant failed to renew his motion for dismissal

at the close of all evidence; and (3) even if the issue had been properly preserved, there was sufficient evidence to submit these charges to the jury.

**2. Assault— by strangulation—misdemeanor assault on female not a lesser-included offense**

The trial court did not commit plain error by failing to submit the charge of misdemeanor assault on a female as a lesser-included offense of assault by strangulation, because: (1) N.C.G.S. § 14-33(c)(2) provides that the elements of assault on a female are assault upon a female person by a male person at least 18 years of age, whereas the offense of assault by strangulation only requires that an individual assault another person and inflict physical injury by strangulation; and (2) assault on a female is not a lesser-included offense of assault by strangulation since each offense includes at least one element not present in the other.

**3. Criminal Law— trial court's remarks to defense counsel— failure to show prejudice**

The trial court did not commit prejudicial error in a first-degree kidnapping, second-degree rape, and assault by strangulation case by its remarks directed toward defense counsel when ruling on evidentiary issues, commenting on procedural matters, or urging the prosecutor and defense counsel to proceed efficiently with the trial of the case, because: (1) N.C.G.S. § 15A-1222 does not apply to comments made outside of the jury's presence; (2) unless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error is considered harmless and the burden is on defendant to show the remarks deprived him of a fair trial; (3) a trial court generally is not impermissibly expressing an opinion when it makes ordinary rulings during the course of the trial; and (4) a review of the record revealed that the statements were not prejudicial, nor does the record reveal a cumulative effect of prejudice resulting from any general tone or trend of hostility or ridicule.

Appeal by Defendant from judgments entered 2 August 2006 by Judge J.B. Allen, Jr., in Wake County Superior Court. Heard in the Court of Appeals 17 October 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Jane Ammons Gilchrist, for the State.*

*Haral E. Carlin, for Defendant.*

STATE v. BRUNSON

[187 N.C. App. 472 (2007)].

ARROWOOD, Judge.

Defendant, Earl Lee Brunson, III, appeals from judgments entered on his convictions of first degree kidnapping, second degree rape, and assault by strangulation. We find no error.

The Defendant was tried before a Wake County jury beginning 31 July 2006. The State's evidence at trial tended to show, in pertinent part, the following: Heather Burns ("Burns") testified that she was twenty years old and that she and the Defendant previously had a romantic relationship. Defendant was the father of Burns' son, born in June 2004, and Burns and Defendant were still dating in February 2006. On the evening of 17 February 2006 they went shopping and then returned to Burns' apartment. After Burns fell asleep at around 9:00 p.m., the Defendant took Burns' car and went out to socialize with friends. Burns woke up at around 2:30 a.m. on 18 February 2004 and saw that her car was missing. She could not reach Defendant by cell phone and called the police to report the car as stolen. When law enforcement officers came to the apartment, she told them that defendant had been drinking and did not have a drivers' license.

When Defendant returned to Burns' apartment at around 3:30 a.m., he was angry at Burns for calling the police about her car. He went to Burns' bedroom and started yelling and cursing at her, hitting the back of her head, and pulling her hair. Their son came to the bedroom and Defendant told him to kiss his mother goodbye because he'd never see her again, then gave Burns a notebook and crayon to write a note for the child to read after she was dead. Defendant choked Burns with his hands, hard enough that her vision blurred, her head hurt, and she had difficulty breathing. Defendant also threatened Burns with a steak knife. Burns ran into the kitchen to get her cell phone, but slipped and fell on the kitchen floor. Defendant followed her into the kitchen, where he choked her again while she lay on the floor, this time with "stronger" force.

After choking Burns a second time, the Defendant demanded she have sex with him, telling her he was "going to get some" and that she "didn't have a choice." He "dragged" her to the living room, where he "used both hands to push [her] on the couch." Burns cried and told Defendant to stop, but he forced her to have intercourse with him, and choked her again. As soon as she was able to slip away from Defendant, Burns picked up her son, left the apartment, and ran to the Cary Fire Station, about a half mile away. Shortly after she got there, law enforcement officers from the Cary Police Department

arrived. After speaking with Burns, law enforcement officers were dispatched to her apartment, where the Defendant was arrested without incident. Burns was taken to WakeMed Medical Center's emergency room for an examination; later that morning she gave a statement to police officers.

Testimony by medical, fire department, and law enforcement personnel generally corroborated Burns' trial testimony. Scott Sidney, a firefighter with the Cary Fire Department, testified that when Burns arrived at the Fire Station in the early morning hours of 18 February 2006, she was "hysterical" and crying. Burns said that her boyfriend had tried to kill her, that he choked and hit her, and that he ordered her to write a note to her son to read after she was dead. A few minutes later, law enforcement officers arrived and assumed control of the situation. Another firefighter, Bonnie McDonald, testified that Burns was sobbing and that she became "almost hysterical" while repeating how the Defendant had told her to kiss her son goodbye. McDonald testified that Burns seemed "genuinely in fear for her life."

Lynn MacDonald, the nurse who treated Burns in the emergency room, testified that Burns reported being raped and choked by the father of her son, and that Burns had a sore neck and was upset and crying. Dr. Gay Benevides, the physician who treated Burns in the emergency room, testified that Burns seemed "horrified" by what had happened and that Burns' account of the events of that night was "bone-chilling." Cary City Police Officers Lillian Royal and Joseph Lengel testified about the statement Burns gave on 18 February 2004, which largely corroborated Burns's trial testimony.

The Defendant testified on his own behalf. He corroborated Burns' testimony, that on the night in question they had taken their son shopping and then returned to Burns' apartment; that after Burns fell asleep he took her car and went out; and that when he returned the couple argued and fought. However, Defendant testified that he had Burns' permission to take her car; that their argument was about his seeing other women, and that his only act of physical aggression was to "push" Burns after she "attacked" him.

Defendant denied having hit or choked Burns, denied brandishing a knife, threatening her, or dragging her to the living room to rape her. Defendant acknowledged that he and Burns had sex in the living room, but testified that it was consensual. Defendant's mother, father, and stepfather also testified on his behalf about the relationship

between Burns and the Defendant. However, none of these witnesses were present during the incident giving rise to these charges.

After the presentation of evidence, the jury found the Defendant guilty of second degree rape, first degree kidnapping, and assault by strangulation. Defendant was sentenced to consecutive prison terms of 100 to 129 months for second degree rape and eight to ten months for assault by strangulation. The court continued prayer for judgment on the conviction of first degree kidnapping. From these convictions and sentences Defendant timely appealed.

---

**[1]** Defendant argues first that the trial court erred by denying his motion to dismiss the charges against him at the end of the State's evidence. At the close of the State's evidence, Defendant moved for dismissal of all charges, on the grounds that the State had presented insufficient evidence to submit the charges to the jury. Following the trial court's denial of his motion, the Defendant presented evidence. Defendant failed to renew his motion for dismissal at the close of all the evidence. We conclude that Defendant failed to preserve this issue for appellate review.

Under N.C. Gen. Stat. § 15-173 (2005), "[i]f the defendant introduces evidence, he thereby waives any motion for dismissal or judgment as in case of nonsuit which he may have made prior to the introduction of his evidence and cannot urge such prior motion as ground for appeal." Moreover, N.C.R. App. P. 10(b)(3) specifically provides that:

> (b) (3) A defendant in a criminal case may not assign as error the insufficiency of the evidence to prove the crime charged unless he moves to dismiss the action . . . at trial. If a defendant makes such a motion after the State has presented all its evidence and . . . the defendant then introduces evidence, his motion for dismissal . . . made at the close of State's evidence is waived. Such a waiver precludes the defendant from urging the denial of such motion as a ground for appeal.
>
> A defendant may make a motion to dismiss the action or judgment as in case of nonsuit at the conclusion of all the evidence[.] . . . However, if a defendant fails to move to dismiss the action or for judgment as in case of nonsuit at the close of all the evidence, he may not challenge on appeal the sufficiency of the evidence to prove the crime charged.

STATE v. BRUNSON

[187 N.C. App. 472 (2007)]

*See also, e.g., State v. Farmer,* 177 N.C. App. 710, 717-18, 630 S.E.2d 244, 249 (2006) ("Defendant failed to preserve for appellate review his assignment of error regarding the sufficiency of the evidence by failing to renew his motion to dismiss after offering evidence."). We further note that even if the issue had been properly preserved, there appears to be sufficient evidence to submit these charges to the jury. This assignment of error is overruled.

---

**[2]** Defendant argues next that the trial court erred by failing to submit to the jury the offense of misdemeanor assault on a female as a lesser included offense of assault by strangulation. We disagree.

Initially, we note that Defendant also failed to preserve this issue for review. N.C.R. App. P. 10(b)(2) provides in pertinent part that:

> A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection; provided, that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury.

Where a defendant neither objects to the trial court's instructions nor requests instructions on lesser offenses, "he is barred by Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure from assigning as error the trial court's failure to instruct the jury on lesser-included offenses supported by evidence at trial." *State v. Collins,* 334 N.C. 54, 61, 431 S.E.2d 188, 193 (1993) (citing *State v. Odom,* 307 N.C. 655, 300 S.E.2d 375 (1983)). *Collins* noted further that:

> In *Odom,* this Court adopted the "plain error" rule "to allow for review of some assignments of error normally barred by waiver rules such as Rule 10(b)(2)." . . . [T]o reach the level of "plain error" contemplated in Odom, the error in the trial court's jury instructions must be "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached."

*Collins,* 334 N.C. at 62, 431 S.E.2d 193 (quoting *Odom,* 307 N.C. at 659-60, 300 S.E.2d at 378; and *State v. Bagley,* 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987)). Accordingly, we review this assignment of error under the plain error analysis.

"A trial court is required to give instructions on a lesser-included offense . . . when there is evidence to support a verdict finding the defendant guilty of the lesser offense." *State v. Singletary*, 344 N.C. 95, 103, 472 S.E.2d 895, 900 (1996) (citations omitted). Defendant argues that he was entitled to an instruction on the offense of assault on a female, on the grounds that it is a lesser included offense of assault by strangulation. Accordingly, we consider whether assault on a female is a lesser included offense of assault by strangulation.

In *State v. Weaver*, 306 N.C. 629, 635, 295 S.E.2d 375, 378 (1982), *overruled in part on other grounds by Collins*, 334 N.C. at 61, 431 S.E.2d at 193, the North Carolina Supreme Court held that:

> [T]he definitions accorded the crimes determine whether one offense is a lesser included offense of another crime. In other words, all of the essential elements of the lesser crime must also be essential elements included in the greater crime. If the lesser crime has an essential element which is not completely covered by the greater crime, it is not a lesser included offense. The determination is made on a definitional, not a factual basis.

Under N.C. Gen. Stat. § 14-33(c)(2) (2005), the essential elements of assault on a female are (1) assault (2) upon a female person (3) by a male person at least 18 years of age. In contrast, the "offense of assault by strangulation requires only that an individual assault another person and inflict physical injury by strangulation. *See* N.C. Gen. Stat. § 14-32.4(b) (2005)." *State v. Braxton*, 183 N.C. App. 36, 41, 643 S.E.2d 637, 641 (2007). Because each offense includes at least one element not present in the other, assault on a female is not a lesser included offense of assault by strangulation. This assignment of error is overruled.

---

**[3]** Finally, Defendant argues that the trial court committed reversible error by engaging in "improper and disrespectful conduct towards Defendant's trial counsel" in violation of Defendant's statutory and Constitutional rights. Defendant cites several occasions when the trial court ruled on an evidentiary issue, commented on a procedural matter, or urged the prosecutor and defense counsel to proceed efficiently with the trial of the case. Defendant characterizes the court's remarks as showing hostility and ridicule towards defense counsel and thereby prejudicing Defendant's right to a fair trial. We disagree.

Under N.C. Gen. Stat. § 15A-1222 (2005), the trial court "may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." Further, "every criminal defendant is entitled to a trial 'before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm.' " *State v. McLean*, 181 N.C. App. 469, 640 S.E.2d 770, 773 (2007) (quoting *State v. Staley*, 292 N.C. 160, 161, 232 S.E.2d 680, 681 (1977) (internal quotation marks omitted). " 'Thus repeated indications of impatience and displeasure of such nature to indicate that the judge thinks little of counsel's intelligence and what he is doing are most damaging to a fair presentation of the defense.' " *Staley*, 292 N.C. at 163, 232 S.E.2d at 683 (quoting *United States v. Ah Kee Eng*, 241 F.2d 157, 161 (2nd Cir. 1957)). " 'Even if it cannot be said that a remark or comment is prejudicial in itself, an examination of the record may indicate a general tone or trend of hostility or ridicule which has a cumulative effect of prejudice.' " *State v. Theer*, 181 N.C. App. 349, 371, 639 S.E.2d 655, 669 (2007) (quoting *Staley*, 292 N.C. at 165, 232 S.E.2d at 684).

However, G.S. § 15A-1222 does not apply to comments made outside of the jury's presence. *See, e.g., State v. Bright*, 301 N.C. 243, 253, 271 S.E.2d 368, 375 (1980) (noting "long line of cases holding that G.S. [§] 15A-1222 is not intended to apply when the jury is not present during the questioning"). Further, " 'unless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless.' This burden to show prejudice 'rests upon the defendant to show that the remarks of the trial judge deprived him of a fair trial.' " *Theer*, 181 N.C. App. at 372, 639 S.E.2d at 670 (quoting *State v. Perry*, 231 N.C. 467, 471, 57 S.E.2d 774, 777 (1950); and *State v. Waters*, 87 N.C. App. 502, 504, 361 S.E.2d 416, 417 (1987)). In this regard, "a trial court generally is not impermissibly expressing an opinion when it makes ordinary rulings during the course of the trial." *State v. Weeks*, 322 N.C. 152, 158, 367 S.E.2d 895, 899 (1988) (citations omitted).

Here, after careful examination of the record before us, we conclude that the statements made by the trial court were not prejudicial. The record does not reveal a cumulative effect of prejudice resulting from any general tone or trend of hostility or ridicule. This assignment of error is overruled.

For the reasons discussed above, we conclude that the Defendant had a fair trial, free of reversible error.

SNYDER v. LEARNING SERVS. CORP.

[187 N.C. App. 480 (2007)]

No error.

Judges CALABRIA and STEPHENS concur.