STATE OF NORTH CAROLINA v. ERVY LEE JONES, JR.

No. 123A95

(Filed 9 February 1996)

**1. Homicide § 253 (NCI4th)— first-degree murder—premeditation and deliberation—sufficiency of evidence**

There was sufficient evidence of premeditation and deliberation in a noncapital first-degree murder prosecution where the State's evidence tended to show that at some point during an argument, the victim told defendant that she was going to call the police; defendant thereafter shot the victim, inflicting a fatal tight contact gunshot wound with his rifle; defendant had to move from the hallway into the living room to retrieve his gun from its usual location behind a bar and then return to the hallway to shoot the victim; the bar was seven or eight arm lengths from the location where defendant shot the victim; and, after the murder, defendant concealed the victim's body in sheets, carried it and the rifle to the victim's car, discarded the car and body in a ditch, and threw the rifle into a river.

**Am Jur 2d, Homicide §§ 152, 439.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

**Modern status of the rules requiring malice "afore-thought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.**

**2. Homicide § 482 (NCI4th)— first-degree murder—premeditation and deliberation—pattern jury instructions**

The trial court did not err in a first-degree murder prosecution by giving the pattern jury instruction on premeditation and deliberation rather than the instructions requested by defendant, which were drawn from the pre-pattern *State v. Buchanan*, 287 N.C. 408. Language in *Buchanan* defining premeditation and deliberation was cast in doubt in *State v. Leach*, 340 N.C. 236.

**Am Jur 2d, Homicide § 501.**

**Modern status of the rules requiring malice "afore-thought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a sentence of life imprisonment entered by Jenkins, J., at the 13 October 1994 Criminal Session of Superior Court, Cumberland County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court on 14 December 1995.

*Michael F. Easley, Attorney General, by Elizabeth Rouse Mosley, Assistant Attorney General, for the State.*

*Nora Henry Hargrove for the defendant-appellant.*

MITCHELL, Chief Justice.

Defendant was indicted on 16 May 1994 for the first-degree murder of Nanette Groves. He was tried noncapitally, found guilty as charged, and sentenced to a mandatory term of life imprisonment. Defendant appealed to this Court asserting two assignments of error.

Evidence presented by the State tended to show that on 11 July 1993 defendant Jones was with James Wilkerson, Jose Ramirez, and two other men known as "Tyrone" and "T" at defendant's house in Eureka Springs, North Carolina. Nanette Groves, the twenty-five-year-old victim, went to defendant's house and was prostituting herself in exchange for crack cocaine. Wilkerson testified at trial that after Tyrone gave the victim drugs in exchange for sex, Wilkerson heard defendant arguing with the victim. Ramirez testified that in the

course of this argument, he heard the victim say she was going to call the police. Shortly thereafter, both men heard gunfire from inside the house. Wilkerson went into the hallway of the house and saw the victim lying on the floor with defendant standing over her holding a sawed-off .22-caliber rifle. Wilkerson testified that he recognized the rifle as the weapon defendant kept on a bar in the living room, which he estimated to be seven or eight arm-lengths from the location of defendant and the victim in the hallway.

After the shooting, defendant wrapped the victim's body in sheets and placed it into the victim's car. With Wilkerson and Ramirez following in Ramirez's truck, defendant drove the victim's car to Lillington, North Carolina, where he abandoned the car and body in a roadside ditch. Defendant then joined the two other men in Ramirez's truck and returned to his house, stopping only to throw the rifle into the Cape Fear River.

The medical examiner testified at trial that the victim died as a result of a tight contact gunshot wound to her head. The examiner explained that a tight contact gunshot wound is a wound inflicted when the muzzle of a gun is in contact with the surface of the victim's body. Defendant presented no evidence at trial.

[1] In an assignment of error, defendant argues that the trial court erred in denying his motion to dismiss the charge of first-degree murder. Defendant contends the evidence was insufficient to establish premeditation and deliberation. When a defendant moves for dismissal, the trial court is to determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal. *Id.*

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Skipper*, 337 N.C. 1, 26, 446 S.E.2d 252, 265 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 895 (1995). "Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *State v. Conner*, 335 N.C. 618, 635, 440 S.E.2d 826,

835-36 (1994). "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Id.* at 635, 440 S.E.2d at 836. A defendant's conduct before and after the killing is a circumstance to be considered in determining whether he acted with premeditation and deliberation. *State v. Vaughn*, 324 N.C. 301, 305, 377 S.E.2d 738, 740 (1989); *State v. Jackson*, 317 N.C. 1, 23, 343 S.E.2d 814, 827 (1986), *sentence vacated on other grounds*, 479 U.S. 1077, 94 L. Ed. 2d 133 (1995).

The State's evidence tended to show that at some point during an argument, the victim told defendant that she was going to call the police. Thereafter, defendant shot the victim, inflicting a fatal tight contact gunshot wound with his rifle. Taken in the light most favorable to the State, the evidence tends to show that defendant had to move from the hallway into the living room to retrieve his gun from its usual location and then return to the hallway to shoot the victim. Wilkerson testified that the bar in the living room was a distance of seven or eight arm-lengths from the location where defendant shot the victim in the hallway. In addition, the evidence tends to show that after the murder, defendant concealed the victim's body in sheets, carried it and the rifle to the victim's car, drove to Lillington, discarded the car and body in a ditch, and threw the rifle into the river. Such evidence, taken in the light most favorable to the State, permits a reasonable inference that defendant premeditated and deliberated the killing, and the trial court did not err in denying defendant's motion to dismiss. This assignment of error is overruled.

[2] In another assignment of error, defendant argues the trial court committed reversible error by failing to give the jury his requested instructions on premeditation and deliberation. The trial court instead gave the pattern instructions on these elements of first-degree murder. *See* N.C.P.I.—Crim. 206.13 (1995).

The relevant portion of the instructions defendant requested are as follows:

Premeditation means thought beforehand for some length of time, however short. However, since the intent to kill must be turned over in the mind in order for the process of premeditation and deliberation to transpire, it is clear that some period of time must necessarily elapse. The true test is not the duration of time as much as it is the extent of the reflection.

For premeditation the killer must ask himself the question, "Shall I kill him?" The intent to kill aspect of the crime is found in the answer, "Yes, I shall." The deliberation part of the crime requires a thought like, "What about the consequences? Well, I'll do it anyway."

Though the mental process constituting premeditation and deliberation may require only a moment of thought, the State must still satisfy you beyond a reasonable doubt that the Defendant, Ervy Lee Jones, Jr., weighed and balanced the matter of killing Nanette Groves in his mind long enough to consider the reason or motive which caused him to shoot Nanette Groves and to form a fixed purpose of fixed design in his mind to kill Nanette Groves in order to accomplish his purpose or motive for killing him [sic].

Defendant argues that because these instructions were drawn almost verbatim from an opinion of this Court in *State v. Buchanan*, 287 N.C. 408, 418, 215 S.E.2d 80, 85-86 (1975), the trial court erred by denying defendant's request. On appeal, defendant argues that the submitted instructions clarified two crucial points: "(1) that premeditation and deliberation require some reflection, however short, followed by a deliberate choice to commit the crime with the specific intent to kill the victim; and (2) that the State has the burden of proving premeditation and deliberation and the defendant has no burden to disprove premeditation and deliberation."

In denying defendant's request to give the submitted instructions, the trial court reasoned that even if the submitted instructions were correct statements on premeditation and deliberation, *Buchanan* predated the pattern jury instructions. The trial court also found that the pattern instructions were in substantial conformity with the submitted instructions. *See* N.C.P.I.—Crim. 206.13.

We have held on several occasions that "a trial court is not required to give a requested instruction verbatim. Rather, when the request is correct in law and supported by the evidence, the court must give the instruction in substance." *State v. Ball*, 324 N.C. 233, 238, 377 S.E.2d 70, 73 (1989); *accord State v. Avery*, 315 N.C. 1, 33, 337 S.E.2d 786, 804 (1985). We conclude that the trial court committed no error in giving the pattern jury instructions contained in N.C.P.I.—Crim. 206.13. In fact, we have recently cast doubt on the validity of certain language from *Buchanan* that defined premeditation and deliberation. *State v. Leach*, 340 N.C. 236, 241-42, 456 S.E.2d 785, 788 (1995) (holding that to the extent *Buchanan* does not comport with

N.C.P.I.—Crim. 206.10, *Buchanan* is disapproved). We reach this conclusion mindful of our duty to continuously scrutinize the pattern instructions for federal and state constitutional and statutory infirmities. *See, e.g., State v. McCoy*, 303 N.C. 1, 29, 277 S.E.2d 515, 534-35 (1981).

NO ERROR.